CREDITORS OF BAILEY, Ex parte. See Cases Nos. 726–729.

CREENE (BERNHARD v.). See Case No. 1,-349.

## Case No. 3,380.

### Ex parte CREGG.

[2 Curt. 98;[1] 3 Liv. Law Mag. 141; 17 Law Rep. 491.]

Circuit Court, D. Massachusetts. Oct. Term, 1854.

#### NATURALIZATION.

A court of record, without any clerk or prothonotary, or other recording officer, distinct from the judge of such court, is not competent, under the act of April 14, 1802 (2 Stat. 153), to receive an alien's preliminary declaration of his intention to become naturalized.

[Cited in U. S. v. Power, Case No. 16,080; Ex parte Tweedy, 22 Fed. 85.]

B. S. Treanor, for petitioner, ex parte.

CURTIS, Circuit Justice. This is an application by Michael Cregg, an alien, to be naturalized. To show a compliance with the requirement of the act of congress to make a previous declaration of intention to become naturalized, he produces a paper which purports to be a copy of a declaration made by him in the police court of the city of Lynn, in the state of Massachusetts. It is admitted by the petitioner that T. B. Newell, Esq., who signed this paper as clerk, was also the judge of that police court, and that there was no other judge or clerk thereof at the time when the petitioner's declaration was made. The question is, whether the police court of Lynn was competent in point of law to receive this declaration. This question depends on the act of congress of April 14, 1802 (2 Stat. 153), which prescribes the conditions upon which aliens may be admitted to be citizens of the United States. The first of those conditions allows the preliminary declaration to be made on oath or affirmation, before the supreme, superior, district, or circuit court of some one of the states. And the third section of the act is as follows: "And whereas doubts have arisen whether certain courts of record in some of the states, are included within the description of district or circuit courts; be it further enacted, that any court of record in any individual state having common law jurisdiction, and a seal and clerk or prothonotary, shall be considered as a district court within the meaning of this act." ·

In Ex parte Gladhill, 8 Metc. 168, the supreme court of Massachusetts decided, that the police court of Lowell was a court of record having common law jurisdiction. The police court of Lynn, which was established by St. 1849, c. 86, is so far identical with the police court of Lowell, in respect to its presiding justice, the mode of his appointment,

the tenure of his office, the jurisdiction of the court, and the record of its proceedings, that we are satisfied that decision applies to those particulars in this case, and we see no sound reason to doubt that the police court of Lynn was a court of record, having a common law jurisdiction. But two questions still remain, —whether that court had a clerk and a seal, In the act for organizing the court (section 7), the justice is directed to keep a fair record of all proceedings therein. In the case of Ex parte Gladhill, the chief justice says: "It might be argued that the act of congress intended to limit the power to a court having a separate recording officer, whose act should authenticate its doings, and that the signature of a separate recording officer might add something to the credit due to an authenticated transcript. On the other hand, it might be urged with some plausibility, that if the judge is specially vested by law with the clerical authority, the court has a clerk within the letter and equity of the statute." This question that court had not occasion to decide; and did not attempt to decide; because by another act (St. 1838, c. 147, § 2), the police court of Lowell was authorized to appoint, and had in fact appointed a clerk, before the declaration then in question was made. We are of opinion, that the police court of Lynn, in which the justice was the recording officer, was not a court having a clerk, within the meaning of the act of congress. Certainly, it does not come within the terms of that act, which clearly imply that there may be courts of record having a seal and common law jurisdiction, but no clerk or prothonotary, and that such courts are not included by the act. Yet how could this be, if it were enough that the presiding justice should himself record the proceedings? A court of record necessarily requires some duly authorized person to record the proceedings. When the act speaks of courts of record, it speaks of courts whose proceedings are duly recorded by authorized persons; and when it says, "having a clerk or prothonotary," it superadds the requirement, that those proceedings shall be recorded by one of those officers. Unless the act be so construed, the requirement of a clerk or prothonotary would have no meaning. The act would have the same construction as if it were stricken out; because the words, court of record, would carry with them the necessity of having the proceedings recorded by some one by authority of law. Nor do we consider it a vain and useless precaution, to confine the power to naturalize aliens, to courts in which one of those officers is found.

In Spratt v. Spratt, 4 Pet. [29 U. S.] 393, it was declared by the supreme court, that the various acts on the subject of naturalization submit the right of aliens to courts of record. They are to receive testimony, to compare it with the law, and to judge on both law and fact. If their judgment is entered on record in legal form, it closes all inquiry; and, like

---

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]

any other judgment of a court having jurisdiction, is complete evidence of its own validity. The importance and value of this privilege of citizenship, which is conclusively and finally bestowed by the act of the court having jurisdiction, should prevent us from allowing less than its full weight, to any requirement by congress which tends to restrict this power, to those tribunals which may be supposed most competent to exercise it. And certainly, there would seem to be no propriety in intrusting to a court, which, in the exercise of its common law jurisdiction, cannot pass finally on any matter of law or fact, affecting property to the amount of one dollar, to make a final decision upon all questions of law or fact involved in an application for this great right, so as to make an absolute and unimpeachable grant of it. Now it is generally true, that a court of record, which is without a clerk or prothonotary, is not only a subordinate tribunal, but one to which a very narrow and comparatively unimportant jurisdiction is intrusted. It is also true that there is more security, that its proceedings will be correctly recorded and certified, if it has such an officer charged with those particular duties. Congress might well have had both these things in view, when it required the court to have such an officer. And we are of opinion, that a court not having such an officer, does not possess the authority conferred by the act.

As to the other question, respecting the seal, we do not find it necessary to determine it. The transcript produced, says it is under the seal of the court, but the paper bears no seal. Whether the court has, in point of fact, adopted a seal, we do not know. Whether if it has done so, it can be deemed a court having a seal, that is, a general seal, forming one of the legal means of authenticating its proceedings, within the meaning of this act of congress, we give no opinion.

The district judge concurs in this decision, and the application for naturalization must be denied.